**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

CHELSEA KRABBE, on behalf of )
minor child K.K.,

      Plaintiff(s),

v.

ROARING FORK SCHOOL       )
DISTRICT RE-1,
400 Sopris Ave
Carbondale, CO. 81623

      Defendant(s).

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAY 30 2024**

JEFFREY P. COLWELL
CLERK

---

**COMPLAINT FOR VIOLATION OF THE INDIVIDUALS WITH DISABILITIES
EDUCATION ACT**

---

Plaintiff Chelsea Krabbe, on behalf of her minor child K.K., by and through her pro se status, alleges as follows:

1. This is an action for judicial review under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.

2. Plaintiff appeals the Administrative Law Judge's March 4, 2024 Decision in Case No. EA 2023-0041 regarding the appropriateness of the reevaluation of K.K. conducted by Defendant Roaring Fork School District RE-1.

3. Plaintiff resides within the boundaries of Defendant school district in Glenwood Springs, Colorado.

4. This Court also has jurisdiction under (20 U.S.C. § 1415(i)(2)(A)) after I have exhausted administrative remedies under the IDEA by completing the due process hearing and obtaining a final decision from the ALJ. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., as Plaintiffs allege that the District's actions constituted disability discrimination by denying K.K. equal access to educational opportunities.

5. The IDEA violations alleged in this complaint include:

a) The District's failure to conduct a comprehensive reevaluation of K.K. in all areas of suspected disability, including academic performance, functional skills, mental health, assistive technology, adaptive behavior, and transition needs;
b) The ALJ's improper exclusion of relevant evidence, such as the State Complaint Officer's decision, the parent funded independent educational evaluation, and expert witness affidavits;

c) The denial of meaningful parental participation in the IEP process by disregarding Ms. Krabbe's concerns about the inadequate evaluations and K.K.'s individual needs; and

d) The  failure to address the mandatory transition assessment requirement, the misapplication of case law regarding transportation services, and the inadequacy of the evaluations in certain areas of suspected disability,resulting in denial of a free appropriate public education (FAPE) under the IDEA, as K.K. was deprived of the individualized assessments, services, and supports necessary to ensure educational benefit and progress in light of his unique needs.

These violations, individually and cumulatively, impeded K.K. 's substantive rights under the IDEA and denied him the meaningful educational opportunity to which he is entitled. The District's actions and the ALJ's erroneous decision have caused significant educational harm to K.K. and warrant reversal and remedial relief from this Court.

WHEREFORE, Plaintiff requests that this Court:

A. Reverse the Administrative Law Judge's Decision of March 4, 2024;

B. Find that Defendant's reevaluation of K.K. was inappropriate under the IDEA; Resulting in a denial of F.A.P.E.

C. Order Defendant to conduct a comprehensive reevaluation of K.K. pursuant to the IDEA; and provide transportation to allow K.K to access his education and related services.

D. Award monetary damages to remedy the educational opportunities lost;

E. Award reasonable expenses such as mileage reimbursement costs; and

F. Grant any other relief this Court deems just and proper.

Dated: May 27th, 2024                    Respectfully submitted,


 /s/ Chelsea Krabbe
**Chelsea Krabbe, Pro Se**
220 Flat Tops View Dr. A305
Glenwood Springs CO. 81601
Telephone: (970) 309-2123
E-mail: ckrabbe84@gmail.com
 Plaintiff


## I.  TABLE OF CONTENTS

I. Table of Authorities............................................................................v

II. Statutes Involved...............................................................................vii

III. Standard of Review...........................................................................vii

IV. Questions Presented.........................................................................viii

V. Statement of Facts.............................................................................vii

VI. Summary of the Argument.................................................................xi

VII. Argument and Citation of Authority.....................................................xi

A. The ALJ Erred in Excluding Relevant Evidence.................................11

B. The Evaluation Failed to Comprehensively Assess All Areas of K.K.'s Suspected Disabilities.............................................................12

1. The Evaluation Did Not Properly Assess K.K.'s Social-Emotional and Behavioral Needs.................................................................13

2. The Evaluation Failed to Assess K.K.'s Adaptive Skills and Independent Living Needs...........................................................14

3. The Evaluation Did Not Adequately Consider K.K.'s Transition Services Needs.............................................................................15

4. The District Failed to Assess K.K.'s Need for Assistive Technology for Written Expression..........................................15

C. The Cumulative Procedural Violations Resulted in a Denial of FAPE...16

VIII. Conclusion....................................................................................17

# I.  TABLE OF AUTHORITIES

CASES:

Amanda J. v. Clark County Sch. Dist., 267 F.3d 877 (9th Cir. 2001)...............18

Black Hawk Hendrix Sch. Dist. v. K.H.S., 832 F.3d 1102 (8th Cir. 2016)...........12

Bd. of Educ. v. Rowley, 458 U.S. 176 (1982)........................................20

Deal v. Hamilton County Bd. of Educ., 392 F.3d 840 (6th Cir. 2004).........10, 20

Doug C. v. Hawaii Dep't of Educ., 720 F.3d 1038 (9th Cir. 2013)..............9, 10

Endrew F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S.Ct. 988 (2017)...........19, 20

L.J. v. Sch. Bd. of Broward Cnty, 927 F.3d 1203 (11th Cir. 2019)...................11

Maus v. Wappingers Cent. Sch. Dist., 688 F. Supp. 2d 282 (S.D.N.Y. 2010)....16

Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171 (3d Cir. 1988).....10

W.D. v. Watchung Hills Reg'l High Sch. Bd. of Educ., 602 F. App'x 563 (3d Cir. 2015).........................................................................15

# II.  STATUTES AND REGULATIONS:

20 U.S.C. § 1400 et seq. (Individuals with Disabilities Education Act "IDEA")..... 1

20 U.S.C. § 1412(a)(1)......................................................................1

20 U.S.C. § 1414(a)(1)(A)..................................................................11

20 U.S.C. § 1414(b)(2)(A)..................................................................11

20 U.S.C. § 1414(b)(3)(B)..................................................................11

20 U.S.C. § 1414(d)(1)(A)(i)(VIII)........................................................16

20 U.S.C. § 1415(b)(1)......................................................................14

20 U.S.C. § 1415(f)(3)(E)(i)...................................................................vii

20 U.S.C. § 1415(f)(3)(E)(ii)..................................................................vii

20 U.S.C. § 1415(i)(2)(C)......................................................................vii

34 C.F.R. § 300.8(c)............................................................................17

34 C.F.R. § 300.15..............................................................................11

34 C.F.R. § 300.17..............................................................................19

34 C.F.R. § 300.301(c)(1)(ii)................................................................11

34 C.F.R. § 300.304.....................................................................11, 13, 20

34 C.F.R. § 300.304(b)(1)....................................................................12

34 C.F.R. § 300.304(c)(4)................................................................11, 13

34 C.F.R. § 300.304(c)(6)....................................................................15

34 C.F.R. § 300.304(c)(7)....................................................................15

34 C.F.R. § 300.305(a)........................................................................15

34 C.F.R. § 300.320(a)(4)....................................................................14

34 C.F.R. § 300.324(a)(2)(v)................................................................16

34 C.F.R. § 300.503(a)........................................................................10

34 C.F.R. § 300.512(a)(2)....................................................................13

34 C.F.R. § 300.513(a)........................................................................17

34 C.F.R. § 300.513(a)(2)....................................................................17

34 C.F.R. § 300.516............................................................................13

34 C.F.R. § 300.519(c)(2)....................................................................12

OTHER AUTHORITIES:

71 Fed. Reg. 46,540 (Aug. 14, 2006).....................................................1

STATUTES INVOLVED

The following statutory provisions are reproduced in the attached Appendix:

• Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 et seq.
• 20 U.S.C. § 1412(a)(1)
• 20 U.S.C. § 1414(a)(1)(A)
• 20 U.S.C. § 1414(b)(2)(A)

• 20 U.S.C. § 1414(b)(3)(B)
• 20 U.S.C. § 1414(d)(1)(A)(i)(VIII)
• 20 U.S.C. § 1415(b)(1)
• 20 U.S.C. § 1415(f)(3)(E)
• 20 U.S.C. § 1415(i)(2)(C)
• 34 C.F.R. § 300.8(c)
• 34 C.F.R. § 300.15
• 34 C.F.R. § 300.17
• 34 C.F.R. § 300.301(c)(1)(ii)
• 34 C.F.R. § 300.304
• 34 C.F.R. § 300.320(a)(4)
• 34 C.F.R. § 300.324(a)(2)(v)
• 34 C.F.R. § 300.503(a)
• 34 C.F.R. § 300.512(a)(2)
• 34 C.F.R. § 300.513(a)
• 34 C.F.R. § 300.516
• 34 C.F.R. § 300.519(c)(2)
71 Fed. Reg. 46,540 (Aug. 14, 2006).....................................................15

## III.  STANDARD OF REVIEW

     The standard of review applied by federal district courts when reviewing state administrative decisions under the IDEA is a modified de novo review. 20 U.S.C. § 1415(i)(2)(C); 34 C.F.R. § 300.516(c)(2). Under this standard, the district court gives "due weight" to the administrative proceedings and must remain "bound by the administrative record." Murray v. Montrose County. Sch. Dist., 51 F.3d 921, 927 (10th Cir.1995). However, the court has discretion to determine how much deference to give the state administrative proceedings after taking into account factors such as witness credibility and whether the decision had "due weight." Id. The district court can hear additional evidence that was unnecessarily excluded from

the administrative record and base its decision upon a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B)(iii); 34 C.F.R. §§ 300.516(c)(2).

## IV.  QUESTIONS PRESENTED

1. Whether the Administrative Law Judge (ALJ) erred in declining to admit Exhibit P, Kamdyn's Adaptive and Functional Daily Living Skills (AFLS) assessment from his independent educational evaluation, in violation of Plaintiff's right to present evidence under the Individuals with Disabilities Education Act (IDEA)?

2. Whether the school district's March 2023 evaluation of K.K. was inappropriately narrow and failed to comprehensively assess K.K. in all areas of suspected disability, including social-emotional functioning, adaptive skills and independent living needs, specific learning disabilities, need for assistive technology for writing, and transition services needs, as required by the IDEA?

3. Whether the cumulative effect of the procedural violations identified in Questions 1 and 2 above, as well as the alleged violation of Plaintiff's right to meaningful participation in the evaluation process, resulted in a substantive denial of K.K.'s right to a free appropriate public education (FAPE) under the IDEA?

## V.  STATEMENT OF FACTS

I, Chelsea Krabbe, am the mother and sole legal guardian of my 17-year-old son, K.K., a student with Autism who qualifies for special education and related services under the Individuals with Disabilities Education Act (IDEA). K.K. is enrolled at Roaring Fork School District (the "District") in Glenwood Springs, Colorado.

In the fall of 2022, I requested an Independent Educational Evaluation (IEE) for K.K. at public expense after disagreeing with the District's evaluation of my son resulting in a denial to change his eligibility category to ASD. The District, after rejecting the request, later agreed and consented to have Dr. Rachel Toplis, a licensed psychologist, conduct the IEE.

Between October and November 2022, Dr. Toplis performed a comprehensive psychoeducational evaluation of K.K. This included assessments of his cognitive abilities, academic achievement, social functioning, behavioral functioning, executive skills, and adaptive

behavior. Based on the results, Dr. Toplis confirmed K.K. 's primary disability of Autism Spectrum Disorder and concluded he also qualified for special education services under the category of Specific Learning Disability in the area of written expression.

Later in November 2022, a State Complaints Officer from the Colorado Department of Education issued a decision finding that the District had violated the IDEA and ordering it to reevaluate K.K. "In all possible areas of need." The District  was required to comprehensively evaluate K.K. across all areas of suspected and unknown disability pursuant to the IDEA's evaluation procedures.

Prior to conducting the reevaluation,  I provided the District with consent to evaluate . However, when discussing with counsel we came to the conclusion that duplicating the same exact assessments conducted by Dr. Toplis as part of the IEE need not be re-administered  as that would violate test protocols prohibiting over-exposure of students. The District agreed, memorializing its reevaluation plan in a "Prior Notice & Consent for Reevaluation" form dated February 3, 2023.

The District's reevaluation focused primarily on additional assessments in 3 main areas: (1) occupational therapy assessments for visual-motor integration and sensory functioning; (2) a communicative status assessment by the District's speech-language pathologist; and  (3) a functional behavior assessment (FBA) by a Board Certified Behavior Analyst.

The reevaluation report dated March 23, 2023 cited only data summaries of Dr. Toplis's testing results from the IEE. However, the report's authors acknowledged their reliance on Dr. Toplis's report rather than re-administering their own  assessments as ordered by the State Complaint Officer. However, the district  later stated that certain evaluations lacked specificity, citing it in a Prior written notice provided after rejecting evaluation requests.

On March 23, 2023, the District convened a meeting of K.K. 's Individualized Education Program (IEP) team to review the reevaluation report. Participants included myself, District staff and administrators, evaluators, and outside consultants. During the lengthy meeting, each portion of the evaluation report was presented and discussed, with different evaluators summarizing their results. However, the BCBA who performed the FBA was not present during the meeting and his colleague was unable to answer many of my questions about the behavior assessment.

Among the items discussed were: the communicative status assessment showing age-appropriate verbal abilities but notable pragmatic language deficits; teacher feedback and a grade review suggesting K.K. was not making meaningful progress; Recap of  the December 2022 OT assessments for visual-motor skills, motor planning; and the summary of the FBA for a Behavior Intervention Plan (BIP).

Despite  my advocates and I raising some concerns about the evaluation's scope and depth during the meeting, the IEP team did not identify any glaring deficiencies in the evaluation's comprehensiveness at that time. The reevaluation report was reviewed and did not cover

academic assessments for SLD, or mental health evaluations. Despite my concerns with the limited assessments, the District rejected requests for independent living skills and executive functioning as well as travel training.

In the subsequent administrative due process hearing, I argued that the District's March 2023 reevaluation failed to comply with the IDEA's requirements for a comprehensive evaluation in several key areas:

Social-Emotional Functioning: The evaluation lacked any formal assessment of K.K.'s social-emotional status or mental health needs beyond the limited functional behavior assessment (FBA). While the occupational therapist administered a self reporting sensory processing questionnaire , no licensed professional evaluated K.K.'s psychological, emotional or mental health functioning.

Adaptive Skills and Independent Living: Apart from brief observations by the OT during the evaluation, the report failed to thoroughly assess K.K.'s independent living skills, ability to navigate the community, or need for instruction in activities of daily living - all of which impact his access to education.

Specific Learning Disability: Despite having an identified Specific Learning Disability in written expression, the evaluation did not include any updated assessments to examine the nature of K.K.'s writing disorder, rule out lack of appropriate instruction as a root cause, or determine if additional interventions were needed.

Assistive Technology for Writing: No assessment was conducted to determine if K.K. required assistive technology devices or services to address his significant written expression deficits, despite samples showing very limited skills.

Transition Services: At age 17 with only 15 credits, the evaluation failed to include any transition assessments, updates to K.K.'s transition plan, or consideration of his post-secondary needs as required by the IDEA.

I further claim that key evidence was improperly excluded from the record, including the State Complaint Decision SC2023:587 that had concluded that the IEP developed after the evaluation failed to meet K.K. 's needs, finding that it was not reasonably calculated resulting in a  denial of FAPE. The ALJ also Excluded  Exhibit P - an Adaptive Functional Living Skills assessment from K.K. 's parent funded independent evaluation - which directly spoke to his independent living and functional needs.

Over my objections, the Administrative Law Judge (ALJ) concluded that the District's revaluation was "appropriate" under the IDEA. The ALJ reasoned that the assessments completed by the District, combined with reliance on Dr. Toplis's recent IEE report, was sufficient to identify K.K. 's educational needs related to his disabilities. Concluding that a transition assessment, although

not done, was likely "premature given K.K's lack of credits' '. As such, the ALJ denied Krabbe's request for a publicly-funded IEE.

I now appeal the ALJ's decision to this Court. Alleging substantive violations of the IDEA based on the reevaluation's failure to comprehensively assess K.K. in all areas of suspected disability. I also allege procedural violations in the improper exclusion of evidence and denial of my meaningful participation rights. And finally, claim the cumulative impact of these violations resulted in a substantive denial of K.K.'s right to a free appropriate public education (FAPE).

## VI.  SUMMARY OF THE ARGUMENT

The Administrative Law Judge (ALJ) erred in concluding that the March 2023 reevaluation of K.K.done by the Roaring Fork School District (the District) was "appropriate" under the Individuals with Disabilities Education Act (IDEA). The IDEA mandates that school districts conduct a comprehensive evaluation to identify all areas of suspected disability and the student's full educational needs. This is a critical prerequisite to developing an appropriate Individualized Education Program (IEP).

Here, the District failed to properly assess all areas of K.K.'s suspected disabilities. Most glaringly, the reevaluation lacked any meaningful assessment of K.K. 's social-emotional functioning and mental health status, his independent living skills and adaptive needs, his specific learning disability in written expression, his need for assistive technology to address that disability, and his transition services needs.

The ALJ also erred by excluding key evidence from K.K.'s independent educational evaluation regarding his adaptive daily living skills and functional capabilities. This violated Plaintiff's statutory right under the IDEA to present relevant evidence.

Moreover, Plaintiff alleges a denial of my procedural right to meaningful participation in the evaluation process by being excluded from key decision-making by the District.

## IV. ARGUMENT AND CITATION OF AUTHORITY

### A. The ALJ Erred in Excluding Relevant Evidence

The IDEA affords parents the "opportunity to present evidence and confront, cross-examine, and compel the attendance of witnesses" at due process hearings challenging the appropriateness of their child's educational program. 34 C.F.R. § 300.512(a)(2); see also 20 U.S.C. § 1415(f)(2), (h)(1). This statutory right to present a meaningful case is a critical procedural safeguard under the IDEA. See Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 184 (3d Cir. 1988).

The ALJ committed reversible error by declining to admit Exhibit P - an Adaptive Daily Living Skills (AFLS) assessment authored by Licensed B.C.B.A,  Mason Strawser  as part of K.K. 's privately-obtained independent educational evaluation (IEE). (Decision at 1). The AFLS assessment spoke directly to K.K.'s significant deficits in adaptive functioning, self-care, and activities of daily living - all of which impact his access to education and ability to make meaningful progress. (Exhibit P).

While the ALJ excluded the AFLS report on hearsay grounds, this ruling was erroneous as the IDEA's statutory rights and procedural safeguards should be "construed in favor of the parents." L.J. v. Sch. Bd. of Broward Cnty, 927 F.3d 1203, 1213 (11th Cir. 2019). The IDEA's parental rights provisions, including the right to present evidence at due process hearings, should be given an "expansive reading." Id.

Here, the AFLS assessment was authored by a credentialed professional and constituted an "evaluation" under the IDEA. See 34 C.F.R. § 300.519(c)(2). And while hearsay rules generally apply at due process hearings, 34 C.F.R. § 300.516(a)(1), the IDEA's hearing procedures allow for exceptions "at the discretion of the hearing officer," including admitting hearsay evidence when it does not preclude access to relevant evidence." Doug C. v. Hawaii Dep't of Educ., 720 F.3d 1038, 1047 (9th Cir. 2013).

Given the AFLS assessment's direct relevance to evaluating K.K. 's functional capabilities and eligibility for specialized instruction, the ALJ abused his discretion in excluding this crucial evidence. As the Ninth Circuit explained in Doug C., Congress contemplated exceptions to hearsay for "evaluators who do not regularly staff school districts" but whose opinions "constitute relevant evidence." Id.  The AFLS assessment squarely fits this category.

Moreover, the IDEA itself requires that parents be given the opportunity to participate in the decision-making process and "present complaints" regarding their child's evaluation. See Deal v. Hamilton County Bd. of Educ., 392 F.3d 840, 857 (6th Cir. 2004). Excluding Exhibit P deprived me of that fundamental right. When combined with the allegations that the District failed to properly assess K.K. 's adaptive skills and independent living needs during the reevaluation, the ALJ's exclusion of the AFLS report was reversible error. See Doug C., 720 F.3d at 1047.

The IDEA's regulations also require prior written notice to parents whenever an evaluation for special education services is proposed or refused, "including a description of other options considered and rejected." 34 C.F.R. § 300.503(a). Here, the District failed to provide any such notice regarding its decision to exclude an assessment of K.K.'s adaptive daily living skills from the reevaluation process. At a minimum, the ALJ should have admitted the AFLS report as relevant evidence to determine if the District committed a procedural violation in this regard.

B. The Evaluation Failed to Comprehensively Assess All Areas of K.K.'s Suspected Disabilities

The IDEA defines "evaluation" as procedures used to determine: (1) whether a child has a disability and the nature and extent of that disability; and (2) the special education and related services needs of the child. 34 C.F.R. § 300.15.  A proper evaluation is the "crucial first step" in ensuring students receive a free appropriate public education (FAPE) tailored to their unique needs.

The evaluation procedures are delineated primarily in 34 C.F.R. §§ 300.301-300.311.  School districts "must use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child." 20 U.S.C. § 1414(b)(2)(A); 34 C.F.R. § 300.304(b)(1). Critically, districts must conduct a "full and individual evaluation" to assess the child in "all areas of suspected disability." 20 U.S.C. § 1414(a)(1)(A), (b)(3)(B); 34 C.F.R. §§ 300.301(c)(1)(ii), 300.304(c)(4). This requirement prevents districts from "circumvent[ing] the IDEA's full-evaluation mandate by waiting for a specific suspected disability to manifest itself before evaluating a student who is displaying significant signs of educational struggle." Louise L. v. N.Y.C. Dep't of Educ., 964 F.3d 479, 494 (2d Cir. 2021).

1. The Evaluation Did Not Properly Assess K.K.'s Social-Emotional and Behavioral Needs

One of the key deficiencies in the District's reevaluation was its failure to comprehensively assess K.K. 's social-emotional status and mental health needs beyond the limited functional behavior assessment (FBA) conducted by Mr. Margaritas.

While the FBA provided some insight into K.K.'s behavioral challenges in the school environment, it did not constitute a full assessment of his social-emotional functioning as required by 34 C.F.R. § 300.304(c)(4). Indeed, as the District's own evaluator Angie Simpson admitted at the due process hearing, no licensed professional like a school psychologist or counselor evaluated K.K. 's psychological, emotional or mental health status as part of the reevaluation process. (Transcript at 118-120).

This is a significant oversight, given K.K.'s history of social struggles, incidents of highly inappropriate behaviors, and prior findings related to his Autism diagnosis - all of which implicate potential social-emotional needs. The IDEA's evaluation procedures explicitly require assessment of a student's "social and emotional status" when an evaluation is conducted. 34 C.F.R. § 300.304(c)(4).

As the Department of Education has explained, the regulation's use of the term "social and emotional status" is intended to cover "any area of student need relative to the student's involvement in the curriculum, school, or life activities." 71 Fed. Reg. 46,540, 46,641 (Aug. 14, 2006). This necessarily encompasses assessment of a student's mental health, coping skills, emotional regulation abilities, psychological needs, and counseling support services.

Despite this clear mandate, the District failed to have any qualified professional assess K.K. 's social-emotional functioning and mental health needs as a part of their reevaluation. This

shortcoming is particularly concerning given evidence in the record that K.K. experienced significant trauma and social/emotional withdrawal following a highly inappropriate behavioral incident on a school bus that led to law enforcement involvement, suspension, and a manifestation determination review in early 2023. (Exhibit U; Transcript at 121-122).

To comprehensively evaluate a student under the IDEA's procedures, districts must look at the "whole child" and should not limit their inquiry to the child's identified areas of disability. See J.P. v. Cnty. Sch. Bd., 516 F.3d 254, 263 (4th Cir. 2008); 34 C.F.R. §§ 300.304(c)(4), (6). By failing to have any qualified professional assess K.K. 's social-emotional and mental health needs - particularly after a highly traumatic incident - the District's reevaluation fell short of the IDEA's comprehensive mandate.

2. The Evaluation Failed to Assess K.K.'s Adaptive Skills and Independent Living Needs

Another glaring deficiency in the reevaluation was its failure to thoroughly examine K.K. 's adaptive skills and his needs for instruction in activities of daily living and independent living. The assessment of "age-appropriate adaptive skills" is essential when evaluating students with disabilities in order to identify areas of need and prepare transition planning for post-school activities. W.D. v. Watchung Hills Reg'l High Sch. Bd. of Educ., 602 F. App'x 563, 567 (3d Cir. 2015).

The IDEA itself requires that IEPs for students age 16 and older include "appropriate measurable postsecondary goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills." 20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa)-(bb) (emphasis added). Assessment of independent living and adaptive skills is therefore a critical component of any evaluation conducted as the student nears the age of transition.

Here, the District's reevaluation was woefully deficient in this regard. While the occupational therapist briefly observed K.K. 's ability to complete functional tasks like holding a pencil and holding his lunch tray while walking in a structured setting, there is no evidence the evaluation comprehensively examined his broader independent living skills. These include essential activities of daily living such as cooking, cleaning, hygiene, money management, transportation, and navigating the community - all of which impact K.K.'s ability to access his education now and make meaningful progress towards his postsecondary goals. Yet the evaluation report is entirely silent on these areas. In fact when I requested these, I was told that was not the responsibilities of a school OT.

2. The Evaluation Failed to Assess K.K.'s Adaptive Skills and Independent Living Needs

The regulations make clear that assessments of "functional skills across...community settings" and "general home/family circumstances and settings" must be part of any initial or reevaluation. 34 C.F.R. § 300.305(a)(1)(ii)-(iii). Evaluations must look at the "whole child" and cannot view the

student only through the prism of the school environment. 34 C.F.R. § 300.304(c)(7); see also Deal v. Hamilton Cnty. Bd. of Educ., 392 F.3d 840, 864 (6th Cir. 2004).

The ALJ erred in concluding the OT's limited functional assessments were sufficient to evaluate K.K. 's independent living and self-care needs. Administering isolated tasks like completing a job application does not equate to a comprehensive assessment of a student's abilities to function independently at home and in the community as envisioned by the IDEA.

Moreover, when parents have expressed concerns about their child's adaptive deficits impacting their education, as I clearly did here, the school district has a duty to evaluate and assess those areas of suspected need using appropriate assessment tools as part of a comprehensive reevaluation. 34 C.F.R. §§ 300.304(b)(1), 300.304(c)(4). The OT's brief observations simply did not satisfy this mandate. By excluding key evidence like the AFLS report, the hearing record was deprived of critical proof of K.K.'s significant adaptive deficits in daily living activities.

3. The Evaluation Did Not Adequately Consider K.K.'s Transition Services Needs

Closely related to the lack of assessment in adaptive and independent living skills is the District's failure to conduct any transition assessments or planning for K.K. as part of the reevaluation, in violation of the IDEA's requirements.

Given his age of 17 and lack of credits towards graduation, the IDEA mandated that K.K. 's evaluation include "appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills." 20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa)-(bb). The transition services component is a "coordinated set of activities...focused on improving the academic and functional achievement of the child" to facilitate movement from school to post-school activities. 20 U.S.C. § 1401(34)(B)-(C).

Transition assessments examine the student's strengths, interests, preferences and needs in areas such as post-secondary education, employment, independent living, and community integration. Without properly assessing these areas, it is impossible for the IEP team to develop an appropriate transition plan and identify the instructional services, community experiences, and functional curricula the student requires to prepare for life after school.

Here, the reevaluation report is completely silent on transition planning. It includes no transition assessments whatsoever despite K.K.'s age and proximity to leaving school. As the district court noted in Maus v. Wappingers Cent. Sch. Dist., the failure to include transition planning in an evaluation of an older student can constitute the denial of a FAPE "by preventing the IEP from being reasonably calculated to enable [the student] to receive educational benefits" 688 F.Supp.2d 282, 300 (S.D.N.Y. 2010).  The same violation occurred here.

4. The District Failed to Assess K.K.'s Need for Assistive Technology for Written Expression

Regulations require IEPs to consider whether the child requires assistive technology devices or services. 34 C.F.R. § 300.324(a)(2)(v). To make this determination, the evaluation team must assess "the child's functional capabilities and whether they may require assistive technology services or devices" in order to have an appropriate IEP developed. 71 Fed. Reg. 46,547 (Aug. 14, 2006).

Assistive technology is defined broadly to include "any item, piece of equipment or product system...that is used to increase, maintain or improve the functional capabilities of children with disabilities." 34 C.F.R. § 300.5. For students with disabilities impacting their written communication, assistive technology can include speech-to-text programs, word prediction software, audio recording tools, and other supports.

Here, there is no dispute that K.K. has a long-identified and significant Specific Learning Disability that impacts his written expression skills. This disability is so severe that, as the ALJ noted, samples of K.K. 's writing like the job application in the record appear at an elementary school level. (Decision at 10; Exhibit 9). Despite the obvious need for extensive supports and services, the District utterly failed to conduct any evaluation of whether K.K. requires assistive technology to address his writing deficits and access the general curriculum.

The District's omission is particularly egregious given the "crucial role" assistive technology can play in allowing students with disabilities like K.K. to "realize their full potential." Amanda J., 267 F.3d at 892. When a student demonstrates significant needs related to their disability, such as the inability to produce written work at an age-appropriate level as K.K. exhibited, the school district must evaluate whether assistive technology is required as part of a comprehensive assessment process. 34 C.F.R. § 300.304(c)(6).

By failing to assess K.K. 's capabilities and explore potential assistive technology supports for his disabling condition in written expression, the District violated the procedural requirements of the IDEA's evaluation process. As the Supreme Court emphasized, this type of "procedural inadequacy" that prevents parents from participating in developing an appropriate IEP or deprives the student of an educational opportunity is a denial of FAPE. Endrew F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S.Ct. 988, 994 (2017).

C. The Cumulative Procedural Violations Resulted in a Denial of FAPE

While Plaintiff alleges both substantive and procedural violations arising from the evaluation process, the IDEA makes clear that in "matters alleging a procedural violation, a reviewing court may find a FAPE denied only if the violation affected the substantive rights of the parent or child." Doug C., 720 F.3d at 1045 (citing 20 U.S.C. § 1415(f)(3)(E)(ii)).

The core substantive right at issue is K.K. 's entitlement under the IDEA to a free appropriate public education (FAPE) tailored to his unique needs. 20 U.S.C. §§ 1401(9), 1412(a)(1); 34 C.F.R. § 300.17. As the Supreme Court has emphasized, this right requires "an educational

program reasonably calculated to enable a child to make appropriate progress in light of the child's circumstances." Endrew F., 137 S.Ct. at 1001.

Here, the cumulative impact of the District's violations during the evaluation process substantially deprived K.K. of a FAPE by failing to identify all of his educational needs related to his disabilities. A key purpose of the IDEA's comprehensive evaluation requirements is to develop an IEP tailored to the "unique needs" of each student by "careful inspection of the [evaluation] data." Bd. of Educ. v. Rowley, 458 U.S. 176, 203, 206 (1982).

But the District's lack of assessment in critical areas like K.K.'s social-emotional functioning, mental health needs, independent living skills, vocational abilities, and need for assistive technology to address his writing deficits, has prevented the IEP team from developing an educational program reasonably calculated to allow him to make meaningful progress. 34 C.F.R. § 300.304(c)(6).

The procedural violations, such as the erroneous exclusion of the AFLS report documenting K.K.'s adaptive skill deficits, further compounded this failure by depriving the record of key evidence regarding the entirety of K.K.'s needs. And there is at least a reasonable probability that these cumulative errors impacted the evaluation's substantive conclusions and resulting IEP. See Deal, 392 F.3d at 866.

Where, as here, procedural violations have "seriously infringed on the parents' opportunity to participate in the IEP process" and denied the student an educational opportunity, this constitutes a denial of FAPE and warrants relief. Doug C., 720 F.3d at 1048; see also 34 C.F.R. §§ 300.513(a)(2).  For these reasons, the Court should reverse the ALJ's decision upholding the flawed reevaluation process that deprived K.K. of FAPE.

## IIIV.  CONCLUSION

For the foregoing reasons, this Court should reverse the Administrative Law Judge's decision and conclusions that the District's March 2023 reevaluation of K.K. was "appropriate" under the Individuals with Disabilities Education Act. The District failed to conduct the comprehensive, full and individual evaluation in all areas of suspected disability mandated by the IDEA's procedures. Glaring deficiencies existed in the reevaluation's lack of assessment of K.K. 's social-emotional and mental health needs, adaptive skills and independent living capabilities, transition services needs, and need for assistive technology to address his identified disability in written expression.

The ALJ further erred in excluding critical evidence from K.K. 's independent educational evaluation in the form of the AFLS assessment report, hampering the right to present my case and depriving the record of proof of K.K.'s significant adaptive deficits. These procedural violations infringe on a parent's  participatory rights under the IDEA.

K.K. has been in educational turmoil and has stagnated throughout his entire high school career. He will be 18 in less than two months, yet due to the educational neglect he suffered, he does not have the required skills to live life to his fullest capabilities. If the District had met its legal obligations, K.K. would have been provided with the support and services necessary for his development. The requested compensation, while not as beneficial as the appropriate services would have been, is essential to help make K.K. whole for the significant damages caused by the District's failures.

Inadequate Reevaluation: The District's March 2023 reevaluation of K.K. was deficient as it failed to comprehensively assess all areas of suspected disability as mandated by the IDEA. This reevaluation neglected to evaluate K.K. 's social-emotional and mental health needs, adaptive skills, independent living capabilities, transition service needs, and the need for assistive technology to address his identified disability in written expression.

Procedural Violations: The District's failure to conduct a thorough reevaluation and the ALJ's exclusion of critical evidence from K.K.'s independent educational evaluation (AFLS assessment report) violated IDEA's procedural safeguards. These violations infringed upon the parent's participatory rights, a core principle of the IDEA.

Substantive Denial of FAPE: The cumulative impact of the District's failures resulted in a substantive denial of K.K. 's right to a free appropriate public education (FAPE) as required by the IDEA. Without proper evaluation and services, K.K. was unable to make meaningful educational progress.

Compensatory Education: K.K. is entitled to compensatory education to make up for the lost services and educational opportunities. The requested monetary compensation reflects the cost of providing these services and addressing the deficiencies caused by the District's failures.

Emotional and Psychological Impact: The lack of appropriate services and support significantly impacted K.K.'s emotional and psychological well-being. Compensation for emotional distress is warranted to acknowledge and address the harm caused by the District's neglect.

. REQUEST FOR RELIEF

Taken together, the cumulative impact of the District's failures in the evaluation process resulted in a substantive denial of K.K. 's right under the IDEA to a free appropriate public education reasonably calculated to allow him to make meaningful progress. Comprehensive evaluations are the cornerstone requirement to develop an appropriate IEP and education plan for students with disabilities. By falling well short of this mandate, the District committed substantive violations warranting reversal under the IDEA.

For these reasons, Plaintiff Chelsea Krabbe respectfully requests that this Court reverse the Administrative Law Judge's decision and conclusions that the District's March 2023 reevaluation of K.K. was "appropriate" under the Individuals with Disabilities Education Act (IDEA). The Plaintiff further requests that the Court order the following relief to remedy the substantive denial of K.K.'s right to a free appropriate public education (FAPE):

Compensatory Education Services: An award of $50,000 to cover the cost of 10 hours per week of special education services over a period of one year, which K.K. was denied due to the District's inadequate reevaluation.

Social-Emotional and Mental Health Services: An award of $4,000 to cover the cost of 1 hour per week of therapy services over a period of one year, addressing K.K.'s unmet social-emotional and mental health needs.

Adaptive Skills and Independent Living Training: An award of $10,000 to cover the cost of 5 hours per week of training over a period of one year, which K.K. was denied, impacting his adaptive skills and independent living capabilities.

Transition Services: An award of $5,000 to cover the cost of 2 hours per week of transition services over a period of 1 year, which K.K. was denied.

Assistive Technology: An award of $3,000 to cover the cost of necessary assistive technology and training to address K.K.'s disability in written expression.

Emotional Distress: An award of $30,000 to compensate for the emotional distress and psychological impact caused by the District's failure to conduct a comprehensive and appropriate reevaluation, thereby denying K.K. the education and services he was entitled to under the IDEA.

The total requested monetary compensation is $93,000.

 CAUSE FOR REQUESTED RELIEF:

The requested relief is necessary to provide K.K. with the education and services he was denied, to compensate for the significant impact on his educational and emotional well-being, and to uphold the principles and protections guaranteed by the IDEA.


Plaintiff respectfully requests that this Court grant the requested relief and award monetary compensation in the amount of $93,000 to remedy the harm caused by the District's failure to conduct an appropriate reevaluation and provide K.K. with the necessary educational services and supports. respectfully requests that this Honorable Court reverse the ALJ's decision, find the District's reevaluation inappropriate and inadequate under the IDEA, and order the District to convene K.K.'s IEP team to

complete a truly comprehensive reevaluation in compliance with the Act's procedures and an award of compensatory education services to remedy the lost educational opportunities.  Plaintiff further requests that the Court grant any other relief it deems just and proper.

Dated: May 25th, 2024     Respectfully submitted,

/s/ Chelsea Krabbe
**Chelsea Krabbe, Pro Se**
220 Flat Tops View Dr. A305
Glenwood Springs CO. 81601
Telephone: (970) 309-2123
E-mail: ckrabbe84@gmail.com
 Plaintiff

I hereby certify that a copy of the foregoing pleading/document was mailed to (defendant(s) or counsel for defendant(s)) at (address) on , 20 . Plaintiff=s Original Signature

*See attached certified Mail recipt*

<table>
<tr><td>

**STATE OF COLORADO**
**OFFICE OF ADMINISTRATIVE COURTS**
1525 Sherman Street, 4th Floor, Denver, CO 80203

**ROARING FORK SCHOOL DISTRICT RE-1**

Complainant,

vs.

**Chelsea Krabbe, on behalf of minor child K.K.,**

Respondent.

</td><td>

▲ COURT USE ONLY ▲

**CASE NUMBER:**

**EA 2023-0041**

</td></tr>
<tr><td colspan="2" align="center">

**DECISION**

</td></tr>
</table>

A hearing was held by Google Meet before Administrative Law Judge Aaron S. Hockman from the Office of Administrative Courts in Denver, Colorado on February 9, and February 16, 2024. Roaring Fork School District RE-1 (District) appeared through Patrick McGinty, and was represented by counsel, Robert P. Montgomery, Semple, Farrington, Everall & Case, P.C. Chelsea Krabbe appeared and represented herself, and K.K.

Patrick McGinty, Angie Simpson, Lydia Hazzard, Chris Margaritas, Chelsea Robson, Laura Pawlowski, and Chelsea Krabbe provided testimony. Exhibit 1 through 16, 16A, 17, E (pages 1 through 35), E2, F, J, O (limited purpose as a historical, or procedural document), and U were admitted into the record. Some exhibits proposed by the District were also proposed by Ms. Krabbe. The District stipulated to the admission of duplicate exhibits, minus any highlights made by Ms. Krabbe.

Ruling on the admissibility of Exhibit P was reserved. I decline to admit Exhibit P into the record on the basis of hearsay. While statements made for the purposes of medical diagnose or treatment are admissible as an exception to the hearsay rule, Exhibit P is an ABA ADLS assessment. Therefore, it contains not merely statements made for the purpose of medical diagnosis or treatment, but also the assessor's conclusions and recommendations. As the assessor did not testify in this matter, the statements are inadmissible hearsay.[1]

---

[1] *See* C.R.S. § 24-4-105(4); CRE 802, and 803(4).

**ISSUES**

1.   Whether Roaring Fork School District RE-1's March 2023 evaluation of K.K. was appropriate?

2.   Whether Chelsea Krabbe is entitle to an Independent Educational Evaluation at public expense?

**FINDINGS OF FACT**

I find the following facts more probable than not, under a preponderance of the evidence standard:

1.   K.K. is a 17-year-old student enrolled at Roaring Forks School. Between August 2021 and December 2022, K.K. was enrolled in Glenwood Springs High School, in the Roaring Forks School District RE-1.[2] His home school is GSHS.[3] There is no dispute K.K. qualifies for special education under the Individuals with Disabilities Act (IDEA), and the Colorado Exception Children's Education Act (ECEA), under the eligibility categories of Autism Spectrum Disorder (ASD), and Specific Learning Disability (SLD) in the area of writing.[4]

2.   K.K. has 15 credits towards graduation. The District notes he may remain in special education through age 21.[5]

3.   In the fall of 2022, Chelsea Krabbe requested an Independent Educational Evaluation (IEE) at public expense, and requested the evaluation be performed by Dr. Rachel Toplis, a licensed psychologist with Summit Psychological Assessment & Consultation. The District agreed.[6]

4.   In conducting the evaluation, Dr. Toplis performed a number of formal and informal assessments between October 18, 2022 and November 18, 2022, including an in-person assessment and observation of K.K. at GSHS.[7] Dr. Toplis also reviewed records of the Student's medical and educational history, including a report from 2019 wherein the Student was diagnosed with ASD.[8]

---

[2] Testimony of Ms. Krabbe; Exhibit E, page 1; Exhibit 3.
[3] *Id.*
[4] *Id.*
[5] Testimony of Ms. Krabbe;Testimony of Mr. McGinty.
[6] Testimony of Mr. McGinty; Exhibit 1, pages 1, 9.
[7] Exhibit 1.
[8] *Id.*

5.      Dr. Toplis's report included the Wechsler Intelligence Scale for Children, Fifth Edition (WISC-V) which is a comprehensive cognitive assessment.[9] The WISC-V or other cognitive assessments should not be performed more than annually.[10]

6.      Dr. Toplis's report also included the Behavior Rating Inventory of Executive Function, Second Edition (BRIEF-2), which is an assessment of a child's executive functioning needs and skills.[11] The BRIEF-2 should not be performed more than annually.[12]

7.      Dr. Toplis's report also included the Woodcock-Johnson IV-Tests of Achievement (WJ-IV) which is a comprehensive assessment of a student's academic levels.[13] The WJ-IV and other standardized assessments should not be performed more than annually because, as the student sees the test more often, there is risk that the results will be invalidated.[14] With the WJ-IV, the testing affirmed that the Student struggles with writing, which demonstrated that he was properly identified as a student with a specific learning disability who requires special education in the area of writing.[15]

8.      Dr. Toplis's report included the Vineland Adaptive Behavior Scales, Third Edition (Vineland) which is an assessment of a student's adaptive behaviors, including independent living skills.[16] Adaptive behaviors include certain social and practical skills such as everyday living skills.[17]

9.      Dr. Toplis's report included the Behavior Assessment System for Children, Third Edition (BASC-3) which is a comprehensive assessment of a child's social and emotional functioning "used to evaluate the behavior and self-perceptions of children."[18] The BASC-3 should not be administered more than once in a calendar year.[19] The BASC-3 can be used to identify other areas of social and emotional functioning that may need to be tested further.[20] In this case, two areas of social and emotional functioning Dr. Toplis examined in more detail were the Student's

---

[9] Testimony of Ms. Pawlowski; Exhibit 1, page 21.
[10] *Id.*
[11] Testimony of Ms. Pawlowski; Exhibit 1, page 22.
[12] Testimony of Ms. Pawlowski.
[13] Testimony of Ms. Pawlowski; Testimony of Chelsea Robson; Exhibit 1, page 24.
[14] Testimony of Ms. Pawlowski; Testimony of Chelsea Robson.
[15] Testimony of Ms. Pawlowski; Testimony of Chelsea Robson; Exhibit 1, page 24.
[16] Testimony of Ms. Pawlowski; Exhibit 1, page 29.
[17] Testimony of Ms. Pawlowski.
[18] Testimony of Ms. Pawlowski; Exhibit 1, page 25.
[19] Testimony of Ms. Pawlowski.
[20] *Id.*

executive functioning skills with the BRIEF-2, and the Student's levels of adaptive functioning, which was assessed with the Vineland.[21]

10.     Dr. Toplis's report included the Social Responsiveness Scale, Second Edition (SRS-2) which is an assessment "designed to measure symptoms associated with Autism" and provides information about a student's social communication skills.[22] The SRS-2 should not be administered more than once in a calendar year.[23]

11.     In addition to Dr. Toplis's report, Ms. Krabbe requested an assessment of the Student's motor function, particularly "to determine if visual-motor skills or sensory differences were impacting his access to writing tasks in class."[24] Accordingly, in December 2022, District occupational therapist, Lydia Hazzard, performed several formal and informal assessments of the Student.[25]

12.     Ms. Hazzard performed a Beery-Buktenica Developmental Test of Visual-Motor Integration ("Beery VMI"), an Adolescent Sensory Profile, and interviewed teachers and observed the Student in class.[26] Generally, Ms. Hazzard's data indicated that the Student functioned within the average range for his same age peers in the area of visual-motor skills and sensory functioning, but identified certain needs for the IEP team to consider accommodations for the Student.[27] Ms. Hazzard's report is dated December 2, 2022.

13.     On November 20, 2022, a State Complaints Officer (SCO) for the Colorado Department of Education determined that the District violated the IDEA, and ordered the District to reevaluate K.K.[28] As part of the reevaluation, the SCO ordered the District to conduct a comprehensive evaluation of K.K. "in all possible areas of need". The District was allowed to determine the appropriate evaluations and evaluators, but the evaluations must be conducted in all areas of suspected need, and must include a functional behavior assessment (FBA).[29] The SCO also ordered that the District's school psychologist, Mark Fishbein, could not perform

---

[21] *Id.*
[22] Testimony of Ms. Pawlowski; Testimony of Ms. Simpson; Exhibit 1, page 28.
[23] Testimony of Ms. Pawlowski; Testimony of Ms. Simpson.
[24] Exhibit 2.
[25] *Id.*
[26] *Id.*
[27] Testimony of Ms. Hazzard; Exhibit 2.
[28] Exhibit O.
[29] *Id.*

the FBA.[30] Instead, the FBA needed to be completed by a Board Certified Behavior Analyst (BCB).[31]

14.  The District sought consent to evaluate.[32] In the process of getting consent for the reevaluation, the Parent, through counsel, told the District that there were certain areas that should not be reevaluated because Dr. Toplis had recently evaluated in those areas.[33] Specifically, Parent's counsel stated: "here are the assessments Dr. Toplis conducted via the IEE, and obviously we don't want these (or their functional equivalents) re-administered now."[34] Those assessments included the WISC-V, the BRIEF-2, the WJ-IV, the BASC-3, the SRS-2, and the Vineland.[35] The District agreed that it was not necessary to reassess the Student in those areas since Dr. Toplis had recently conducted those evaluations.[36] CDE approved the course of action agreed to by the parties.[37]

15.  The District maintains to re-administer those same assessments only four months later would have been contrary to the standards set by the tests themselves, and likely invalidated the scores.[38]

16.  Ms. Krabbe wanted further assessment by the occupational therapist ("OT"), assessment in the area of communication by a speech and language pathologist, and a functional behavior assessment.[39] The District memorialized the reevaluation plan in a "Prior Notice & Consent for Reevaluation" form.[40] The District reevaluated the Student, culminating in an evaluation report dated March 23, 2023.[41]

17.  The evaluation report included a description of the communicative status assessments performed by District speech language pathologist (SLP), Angie Simpson, including: (1) A Clinical Evaluation of Language Fundamentals (CELF-5); (2) a file review of Dr. Toplis's SRS-2 and other assessments; (3) a social language observation; and (4) a pragmatic language questionnaire from teachers

---

[30] Exhibit O, pages 41, and 42; Exhibit 3, page 1.
[31] Exhibit A; page 1; Exhibit O.
[32] Testimony of Mr. McGinty.
[33] Exhibit 6.
[34] Id.
[35] Id.
[36] Testimony of Mr. McGinty;
[37] Testimony of Mr. McGinty; Exhibit 6.
[38] Testimony of Mr. McGinty; Testimony of Ms. Robson; Ms. Pawlowski; and Ms. Simpson.
[39] Exhibit 6; Exhibit 8.
[40] Exhibit 8
[41] Exhibit 3.

and parents.[42] Prior to beginning her assessments of K.K., Ms. Simpson contacted Ms. Krabbe and outlined her assessment plan, including a review of the records of Dr. Toplis's report.[43] Ms. Krabbe agreed.[44]

18.    District special education teacher, Chelsea Robson, evaluated the Student's academic performance. The review included a discussion of his grades and observations of classroom teachers from each of the Student's classes.[45] The academic review also considered the Student's attendance, state assessments, and review of the WJ-IV from Dr. Toplis's report.[46]

19.    The District contracted with Chris Margaritas, a Board Certified Behavior Analyst (BCBA) from Ascendigo Autism Services to perform an FBA.[47] An FBA is an assessment that identifies the pervasive behaviors interfering with a student's ability to access education, and identifies the function of those behaviors to assist in the development of a behavioral intervention plan (BIP).[48] Mr. Margaritas's FBA of K.K. followed the CDE's recommended guidelines and met his own expert standards for conducting an FBA.[49] The FBA identified target behaviors for the IEP team to consider including academic engagement, receptiveness to instruction, social engagement, and task initiation.[50] Moreover, the FBA noted that the Student had previously engaged in inappropriate behavior on a school bus when he exposed himself around younger students.[51] The FBA notes that the "exposure incident appears to be an isolated incident."[52] Where a behavior only happens in isolation, and does not occur frequently in a manner that impacts a student's day to day functioning in school, it is not something that should be targeted in an FBA.[53] Moreover, it would not have been helpful to extend the FBA to a bus because K.K. is no longer riding the school bus.[54]

---

[42] Exhibit 3, pages 1 through 6.
[43] Testimony of Ms. Simpson; Exhibit 17.
[44] *Id.*
[45] Exhibit 3, pages 7 through 9.
[46] Exhibit 3, page 8.
[47] Exhibit 3, page 9; Exhibit 5.
[48] Testimony of Mr. Margaritas.
[49] Testimony of Mr. Margaritas; Exhibit 5.
[50] Exhibit 5, pages 6 and 7.
[51] Exhibit 5, page 8.
[52] *Id.*
[53] Testimony of Mr. Margaritas.
[54] Exhibit 5, page 20.

20.    District OT, Lydia Hazzard, conducted further motor assessments for K.K.[55] Ms. Hazzard reviewed his past records including her evaluations from December 2022. [56] Even though she had performed a sensory profile in December 2022, she performed another sensory profile survey in March 2023 asking the same questions to school psychologist Mark Fishbein, rather than the Student.[57] Ms. Hazzard redid the sensory profile in this manner because the Parent had expressed concern that K.K. may not have accurately self-reported on the previous assessment.[58] Moreover, she chose Dr. Fishbein because Ms. Krabbe provided feedback that Mr. Fishbein knew K.K. best of his current teachers and providers.[59] In addition, Ms. Hazzard assessed K.K.'s independent living skills, including his ability to fill out a job application and access the school environment.[60] Finally, the evaluation report included a review of Dr. Toplis's report.[61]

21.    There is a dispute whether K.K.'s job application is appropriate, given his circumstances.[62] On review of the application, it appears appropriate, other than his answer to a reference, listing "friend".

22.    The assessments culminated in an evaluation dated March 23, 2023.[63]

23.    The Student's IEP team met on March 23, 2023 to discuss the evaluation report. Amongst the participants were Ms. Krabbe, Mr. McGinty, Ms. Robson, Ms. Hazzard, Ms. Simpson, the school principal, assistant director of special education), a school psychologist, and the clinical director of Ascendigo, Michael Pittinaro, attended the meeting to discuss Mr. Margaritas's FBA. The team discussed the evaluation results in their entirety, and no issues were raised as to whether the evaluation was comprehensive.[64]

24.    Ms. Simpson reviewed the results of the communicative status assessment. No meeting participants had questions or concerns about the communicative status assessments.[65]

---

[55] Exhibit 3, pages 9 and 10.
[56] Testimony of Ms. Hazzard; Exhibit 3, page 9.
[57] Testimony of Ms. Hazzard; Exhibit 3, page 10.
[58] Testimony of Ms. Hazzard; Exhibit 3, page 9.
[59] Testimony of Ms. Hazzard; Exhibit 3, page 10.
[60] Testimony of Ms. Hazzard.
[61] Exhibit 3, pages 1, 10, and 11.
[62] Testimony of Ms. Hazzard; Testimony of Ms. Krabbe; Exhibit 9.
[63] Exhibit 3.
[64] Exhibit 16.
[65] *Id.*

25.   Ms. Robson discussed the results of the academic assessments, including Dr. Toplis's results. The team discussed the results, including specific interventions in place for the Student for more than thirty minutes. Many participants had questions or comments about certain services provided to the Student and the Student's response to such interventions. However, no participants questioned the evaluation results, its comprehensiveness, or questioned whether it failed to identify the Student's needs.[66]

26.   Ms. Hazzard discussed the results of the motor assessments. The Parent inquired about the assessment into the Student's independent living skills. Ms. Hazzard explained the necessity of assessing a student's independent living skills as it pertains to accessing school, and explained that anything related to out-of-school functioning is typically considered by non-school based professionals. Indeed, it is necessary to assess what a student needs to access public school. No member of the IEP team followed up on Ms. Hazzard's explanation. At hearing, Ms. Hazzard testified that it is important to consider what skills a student needs in school, and whether a lack of skills impacts their access to school.[67]

27.   The team discussed whether it was necessary to review Dr. Toplis's report. The team agreed it was not necessary. Specifically, the Parent expressed that Dr. Toplis's report was "extensive and well done" and noted that it had "already been talked about" in several meetings.[68]

28.   Finally, the team reviewed Mr. Margaritas's FBA. The Parent was pleased with the FBA."[69]

29.   Ms. Krabbe takes issue with the evaluation process, and maintains the District has not complied with the SCO's order, or applicable law, and failed to perform a comprehensive evaluation in all areas, including ones not related to K.K.'s disability. Additionally, she argues the academic evaluations were insufficient and failed to look at K.K.'s current situation; the FBA was limited and incomplete; social boundaries and social interactions were not addressed, social-emotional and adaptive/functional evaluations were not completed, adaptive daily living skills were not reviewed, transitioning assessment was not reviewed, specific learning disabilities were not addressed, there was an inadequate scope of OT evaluation,

---

[66] *Id.*
[67] Testimony of Ms. Hazzard; Exhibit 16.
[68] Exhibit 16.
[69] Testimony of Ms. Krabbe; Exhibit 16.

which failed to address processing speed, transportation was not addressed, nor were K.K.'s exceptional abilities.

## CONCLUSION OF LAW

Based on the foregoing findings of fact, I make the following conclusions of law:

1.   The Office of Administrative Courts, and the undersigned, have jurisdiction over the persons and subject matter in this case, pursuant to § 24-4-105 Colorado Revised Statutes, 1 Code of Colorado Regulations (CCR) 301-8 §§ 6.02, 6.02(7.5)(c), 6.02(7.5)(f), and 34 Code of Federal Regulations (CFR) §§ 300.502(b)(2), 300.508, 300.511(b).

2.   The parent of a child with a disability has the right to obtain an independent educational evaluation (IEE) of the child, at public expense, subject to certain restrictions.[70] The parent may request the IEE if they disagree with the evaluation obtained the District.[71]

3.   An IEE is an evaluation conducted by a qualified examiner, not employed by the District.[72]

4.   When a parent asks for an IEE at public expense, the District must, without unnecessary delay, grant the request, or file a Due Process Complaint to show that their evaluation is appropriate.[73] Here, the District filed a Due Process complaint.

5.   An evaluation is a procedure to determine whether a child has a disability, and the nature and extent of the special education and related services that the child may need.[74]

6.   When conducting an evaluation, the District must provide notice to the parent, and use a variety as assessment tools and strategies to gather relevant functional, developmental, and academic information about the child, including information provided by the parent, to whether the child has a disability, and the content of the child's IEP.[75] The District may not use any single measure or assessment as the

---

[70] 34 CFR §§ 300.502(a)(1), and (3), 34 CFR § 300.502(b).
[71] 34 CFR § 300.502(b)(1).
[72] 34 CFR § 300.502(a)(3)(i).
[73] 34 CFR § 300.502(b)(2).
[74] 34 CFR § 300.15.
[75] 34 CFR § 300.304(a) and (b).

sole criteria.[76] The testing instruments must be technically sound, that assess the relative contribution of cognitive, behavioral, physical, and developmental factors.[77]

7.   Additionally, the child is to be assessed in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities.[78] The evaluation must be sufficiently comprehensive to identify all of the child's special education and related services needs, whether or not commonly linked to the disability category in which the child has been classified.[79] Further, the assessment tools and strategies must provide relevant information that directly assists persons in determining the educational needs of the child are provided.[80]

8.   As part of an initial evaluation, or reevaluation, existing data on the child must be reviewed, including information provided by the parent, current classroom observations, and observations from teachers and service providers.[81] Based on that review, additional data, if any, should be identified to determine the present levels of academic achievement and related developmental needs of the child.[82]

9.   The first issue in this matter is whether the March 23, 2023 evaluation was "appropriate" Whether the evaluation is appropriate is a question of compliance with the SCO's order, and this applicable CFRs. The District was to conduct a comprehensive evaluation of K.K. in all possible areas of need, and must include a FBA. This is generally the standard in the CFRs (34 CFR § 300.304(b)(4)).

10.   Here, the March 2023 evaluation relied on the assessments of Dr. Toplis. As these tests should not be administered more than once annually, I conclude it was appropriate to rely on them. The tests were not discredited by the SCO's order. Further, the District is required by regulation to review existing records in reassessments.

11.   The evaluation completed additional occupational therapy, communicative status assessments, academic assessments, and FBAs. There is no evidence the

---

[76] 34 CFR § 300.304(b)(2).
[77] 34 CFR § 300.304(b)(3).
[78] 34 CFR § 300.304(b)(4).
[79] 34 CFR § 300.304(b)(6).
[80] 34 CFR § 300.304(b)(7).
[81] 34 CFR § 300.305(a)
[82] 34 CFR § 300.304(a)(2)(ii).

assessments were inappropriate. Now Ms. Krabbe essentially challenges the scope of the assessments in these areas. There is no evidence these assessments indicated additional or further evaluation was required.

12.   Ms. Krabbe also argues transition planning should have occurred. As K.K. currently has 15 credits towards graduation, and may be in special education through age 21, I conclude transition planning would be premature. Certainly he will need transition planning in the future.

13.   Ms. Krabbe also argues transportation needs should have been addressed. I am persuaded by the District's argument *Boulder Valley School District RE-2* is applicable to this matter. As K.K.'s home school is GSHS, not RFHS, he is not entitled to transportation services.[83]

14.   It is very clear to the Court that Ms. Krabbe loves, and has K.K.'s best interests are heart, particularly by ensuring K.K. receives all the services to which he is eligible, or may need. However, I conclude the District has shown by a preponderance of the evidence that their March 23, 2023 evaluation was appropriate, as they assessed K.K. in additional areas of need, while essentially building upon existing information. As such, Ms. Krabbe is not entitled to an IEE at public expense.

## DECISION

Roaring Forks School District RE-1 has shown by a preponderance of the evidence that the March 23, 2023 evaluation was appropriate. As such, Ms. Krabbe is not entitled to an IEE at public expense.

This decision is the final decision of the independent hearing officer pursuant to 34 C.F.R. §§ 300.514(a) and 300.515(a). Any party has the right to bring a civil action in appropriate court of law, either federal or state, pursuant to 34 C.F.R. § 300.516.

**Done and Signed:** March 1, 2024

_____
Aaron S. Hockman
Administrative Law Judge

---

[83] 123 LRP 24955 *8 (SEA CO 2023) *citing El Paso Cnty. Sch. Dist. #11,* 120 LRP 8085 (SEA CO 2019); *Fick v. Sioux Falls Sch. Dist.,* 337 F.3d 968 (8th Cir. 2003); *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.,* 178 F.3d 968 (8th Cir. 1999).

## CERTIFICATE OF SERVICE

I certify that I have served a true and correct copy of the above Decision by certified mail and/or electronic transmission to:

Robert P. Montgomery
Semple, Farrington, Everall & Case, P.C.
rmontgomery@semplelaw.com

Chelsea Krabbe
220 Flat Tops View Dr. A305
Glenwood Springs CO 81601
ckrabbe84@gmail.com

Gloria Alaniz
Colorado Department of Education
Via Simplicity FTP

Dated:  March 4, 2024

/s/Nicole Q
Court Clerk